**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| PEOPLE OF GUAM, | CRIMINAL CASE NO. CF0316-25 |
| vs. | **DECISION AND ORDER** |
| **CHRIS JUNIOR ANDERSON TEDTAOTAO,** | |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on May 6, 2026, for hearing on Defendant **CHRIS JUNIOR ANDERSON TEDTAOTAO's** ("Defendant") Motion to Suppress Oral and Written Statements ("Motion to Suppress"). Present were Assistant Attorney General Nicholas Ennis on behalf of the People of Guam ("the Government") and Defendant with counsel, George N.P. Valdes. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On May 16, 2025, Defendant was indicted with the following charges: (1) Possession of a Concealed Firearm (As a Third Degree Felony); (2) Possession of a Firearm without a Firearms Identification Card (As a Third Degree Felony); (3) Possession of a Schedule II Controlled Substance (As a Third Degree Felony); (4) Theft by Receiving Stolen Firearm (As a Third Degree Felony); (5) Impersonating a Police Officer (As a Misdemeanor); (6) Eluding a Police Officer

(As a Misdemeanor); and (7) Display of Blue Lights (As a Violation). (Indictment, May 16, 2025).

On July 24, 2025, Defendant filed a Motion to Suppress on the basis that the Guam Police Department ("GPD") did not have any reasonable suspicion to effectuate a traffic stop.[1] The Court subsequently denied the Motion to Suppress. *See* Dec. & Order, Sept. 5, 2025.

On September 9, 2025, a grand jury returned a Superseding Indictment, adding the charge of Theft by Receiving Stolen Firearm (As a Third Degree Felony).[2] (Superseding Indictment, Sept. 9, 2025).

On April 6, 2026, Defendant filed the instant Motion, along with a Declaration in Support of the Motion. On April 20, 2026, the Government filed its Opposition.

On May 6, 2026, the Court heard sworn testimony from Dr. Daniel Neren ("Dr. Neren"), GPD Detective Joe Nucum ("Detective Nucum"), Guam Fire Department ("GFD") Captain John C. Carbullido ("Captain Carbullido"), and Defendant. After the conclusion of witness testimony, the Court gave the parties leave to file proposed findings of fact and conclusions of law. On May 12, 2026, the Government filed its proposed findings of fact and conclusions of law. On May 20, 2026, Defendant filed his proposed findings of fact and conclusions of law. The Court subsequently placed the matter under advisement.

The Court ascertained the following facts from witness testimony:

1. On May 8, 2025, Defendant was arrested following a police pursuit involving a white Chevrolet Tahoe and transported to Central Precinct Command ("CPC").

2. At approximately 4:20 p.m., Detective Nucum was informed that Defendant was going ballistic in his holding cell and banging his head against the cage.

---

[1] Defendant was represented by Attorney Thomas J. Fisher at this time.

[2] Defendant now faces the following charges: (1) Possession of a Concealed Firearm (As a Third Degree Felony); (2) Possession of a Firearm Without a Firearms Identification Card (As a Third Degree Felony); (3) Possession of an Unregistered Firearm (As a Third Degree Felony); (4) Possession of a Schedule II Controlled Substance (As a Third Degree Felony); (5) Theft by Receiving Stolen Firearm (As a Third Degree Felony); (6) Impersonating a Police Officer (As a Misdemeanor); (7) Eluding a Police Officer (As a Misdemeanor); and (8) Display of Blue Lights (As a Violation). (Superseding Indictment, Sept. 9, 2025).

3. Upon arrival at CPC, Detective Nucum observed an abrasion on Defendant's forehead. Defendant stated the injury was from hitting his head on the cage. When asked if he needed medical assistance, Defendant responded affirmatively. Medics were requested at approximately 4:52 p.m.

4. Defendant was moved to an interview room while awaiting medical personnel.

5. At approximately 4:54 p.m., Defendant was advised of his Miranda rights.

6. Detective Nucum reviewed the GPD Custodial Interrogation Form with Defendant. Defendant handwrote "yes" next to each right, initialed the form, and signed the waiver at the bottom.

7. Detective Nucum testified that Defendant was cooperative and not combative.

8. Detective Nucum observed that Defendant appeared coherent and spoke clearly.

9. During the interview, Defendant provided detailed responses regarding the vehicle, blue lights, firearm, and his methamphetamine use.

10. Defendant admitted to using methamphetamine and swallowing methamphetamine while being pursued by police.

11. Detective Nucum did not conduct a mental faculties evaluation prior to administering Miranda warnings.

12. Defendant never requested for an attorney or asked that questioning cease.

13. Detective Nucum testified Defendant was not forced to speak with him.

14. Detective Nucum informed Defendant that Cathy Cruz would be interviewed because the vehicle was registered in her name. He denied ever threatening to arrest Ms. Cruz.

15. Detective Nucum denied threatening Defendant.

16. Detective Nucum denied telling Defendant what to write in his written statement.

17. Detective Nucum denied making any promises to Defendant.

18. ALS medical personnel arrived at approximately 5:04 p.m.

19. Upon ALS arrival, Detective Nucum concluded the interview so that Defendant could be assessed.

20. Captain Carbullido testified Defendant was sitting, conscious, alert, and in no apparent distress, although he complained of right-sided rib pain.

21. Captain Carbullido also noted the abrasion on Defendant's forehead.

22. Captain Carbullido conducted a basic assessment and asked Defendant simple questions.

23. Captain Carbullido observed no serious or life-threatening injuries and testified that Defendant was stable.

24. Captain Carbullido could not recall whether officers spoke to Defendant during the assessment but stated that, in his experience, GPD officers do not interfere with GFD medical evaluations.

25. Detective Nucum testified that no questions were asked of Defendant from 5:04 p.m. to 5:19 p.m.

26. Defendant then provided a brief written statement between at 5:19 p.m. and 5:20 p.m.

27. Defendant was subsequently transported to GRMC and evaluated by Dr. Neren.

28. Dr. Neren diagnosed Defendant with methamphetamine intoxication, forehead abrasion, and suicidal ideation. He testified, however, that Defendant was alert, oriented, and responsive, and that Defendant's methamphetamine intoxication was clinically on the milder side.

29. Dr. Neren performed a standard emergency bedside neurological exam. He did not assess Defendant's ability to answer complex questions.

30. Defendant admitted that he signed and initialed the waiver form.

31. Defendant testified that Detective Nucum told him what to write on the written statement.

32. Defendant acknowledged telling Detectives during their oral interview that Ms. Cruz did not drive the Tahoe, that he used methamphetamine, and that he swallowed methamphetamine. Defendant admitted that these details came from him and not the detectives.

33. Defendant admitted that the written statement was written in his own handwriting and signed by him.

## DISCUSSION

The first issue before the Court is whether Defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. Defendant argues that Detective Nucum exploited Defendant's vulnerable state by choosing to mirandize and question him despite knowing that he had been banging his head in the cell, was in pain, and needed medical attention. (Mot. Suppress at 8).

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself," U.S. Const. amend. V, and is applicable to Guam through the Organic Act. *See* 48 U.S.C.A. § 1421b(d). "The main purpose of *Miranda* is to ensure that an accused is advised of and understands the right to remain silent and the right to counsel." *Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010). The burden is on the Government "to demonstrate that Defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Arizona*, 384 U.S. 436, 475 (1966).

"The voluntary, knowing and intelligent nature of a *Miranda* waiver is to be gleaned from the totality of the circumstances, and the People bear the burden of proving by a preponderance of the evidence that the waiver was properly made. A court reviewing such a waiver must examine the entire record and make an independent determination of the ultimate issue of voluntariness based on the totality of circumstances." *People v. Towai*, 2024 Guam 9 ¶ 33 (internal citations omitted). *See also People v. Perez*, 2021 Guam 18 ¶ 19 ("Our jurisprudence on waivers of constitutional rights considers the totality of the circumstances surrounding a waiver, including a defendant's language abilities, coercive circumstances, awareness of the relevant and likely circumstances, and knowledge of the right being abandoned.").

Here, although Defendant was diagnosed with methamphetamine intoxication and had recently been banging his head against the holding cell cage (resulting in a visible abrasion on his forehead), he was nevertheless found to be alert, oriented and responsive both at the precinct and

at GRMC. "The physical injuries or medical treatment must affect a defendant's ability to intelligently decide whether to waive his rights before such circumstances will require suppression of statements." *State v. Pinela*, 458 N.W.2d 795, 797 (S.D. 1990). The evidence does not support such an effect here. Despite the forehead abrasion and his report of right sided rib pain, Defendant's cognitive functioning remained intact to a degree sufficient to understand his rights and voluntarily interact with officers. Defendant read aloud, initialed, signed, and confirmed understanding of each *Miranda* right. His intoxication was clinically mild; he was oriented and communicative. Further, the brief interval between Defendant's request for medical assistance and the administration of *Miranda* warnings does not, by itself, render the waiver involuntary. Detective Nucum did not condition medical treatment on cooperation. When medical personnel arrived roughly ten minutes later, questioning ceased, and no evidence was presented showing the medical care was delayed or obstructed. Accordingly, the Court finds no basis to grant the Motion to Suppress on this ground.

The Court next turns to whether or not Defendant's statement was involuntary or coerced. Defendant argues he was coerced into writing his statement because officers threatened to arrest his girlfriend, Ms. Cruz, if he did not provide a statement, and because Detective Nucum dictated what he should write. (Mot. Suppress at 8). "Involuntary or coerced confessions are inadmissible at trial, because their admission is a violation of a defendant's right to due process under the Fourteenth Amendment. A confession is involuntary if it is not 'the product of a rational intellect and a free will.'" *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011) (internal citations omitted). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

> Coercive police activity can be the result of either physical intimidation or psychological pressure. Whether a confession is involuntary must be analyzed within the totality of the circumstances. The factors to be considered include the degree of police coercion; the length, location and continuity of the interrogation; and the defendant's maturity, education, physical condition, mental health, and age.

*Brown*, 644 F.3d at 979 (internal citations and quotation marks omitted).

In this case, the Court finds that Defendant's concern for Ms. Cruz during the interview does not amount to coercion absent credible evidence that officers exploited that concern. No threats, promises, or coercion were credibly established. There was no testimony that Defendant's demeanor changed throughout the interview. The interview was approximately ten minutes long and as noted earlier, Defendant was alert, oriented and communicative. Further, Defendant acknowledged that the incriminating details provided during the oral interview came from him and that the written statement as drafted and signed by him. Therefore, the Court finds that Defendant's statement was the product of a rational intellect and a free will, and denies Defendant's Motion to Suppress.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Suppress.

**IT IS SO ORDERED** this 30th day of July, 2026.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

SERVICE VIA E-MAIL
I acknowledge that an electronic copy of the original was e-mailed to:

AG, G. Valdes

Date: 7/30/26 Time: 11:36am

Antonio C. Cruz
Deputy Clerk, Superior Court of Guam